CxsCG2023CV02810  08/17/2023  03:35:44  PM Docket Entry No. 1

Exhibit 1

COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
SUPERIOR PART OF CAGUAS

[Stamped] UNICO LEGAL 26OCT*23 PM1:05

| | |
|---|---|
| FAUSTINO XAVIER BETANCOURT COLON<br><br>**Plaintiff**<br><br>V.,<br><br>UNIVERSAL GROUP, INC.<br><br>**Defendant** | RE: PETITION FOR AN ORDER |

**COMPLAINT**

**TO THE HONORABLE COURT:**

Comes now plaintiff, Faustino Xavier Betancourt Colon (hereinafter "Mr. Faustino Betancourt" or "Mr. Betancourt Colon") and requests a **permanent injunction**[1] against Universal Group Inc., (hereinafter "defendant" or "Universal Group") in accordance with the provisions of Title III of the American with Disabilities Act.

**I. THE PARTIES**

1. The plaintiff's name is: Faustino Xavier Betancourt Colon. His mailing address is: Res. Los Lirios Apt.34, 11 Teresa Hornet St., Building 12, Apt. 34, San Juan (Cupey), PR 00926-7561. His phone number is: (787) 348-7280.
2. The name of the defendant is Universal Group Inc.
3. The defendant is titleholder, lessee, lessor and/or operator of the place of public accommodation identified in paragraph 7.

**II. THE ALLEGATIONS**

---

[1] No preliminary injunction is requested at this time.

**A. About the Medical Conditions of the Plaintiff**

4. Mr. Faustino Betancourt Colon has the following conditions: (1) hypertension, (2) type II diabetes mellitus; (3) diabetic neuropathy; (4) osteoarthritis; (5) inflammatory arthritis; (6) hydrocephaly; (7) congestive heart failure; (8) deformity in both feet; (9) chronic pulmonary obstruction; (10) sleep apnea; (11) degenerative joint disease of the lumbar spine; (12) carpal tunnel. Due to heart failure, he was implanted with an automatic defibrillator in February 2012, to prevent sudden death.

5. As a result of the conditions, Mr. Betancourt Colon faces a significant mobility limitation compared to the average person in the general population. A concrete example is heart failure, which causes swelling in the feet, generating pain that considerably limits his ability to walk. The very act of moving with swollen feet becomes a painful and complicated experience. In addition, heart failure significantly affects his ability to move around, since any activity that requires walking causes agitation in his breathing, or can even lead to episodes of hyperventilation. This drastically decreases his autonomy and freedom of movement.

6. As if that were not enough, the presence of foot deformities also contributes significantly to your mobility limitations and the challenge of maintaining balance. These deformities represent an additional challenge that affect his ability to move fluidly and safe, which further complicates his daily life. In summary, Mr. Betancourt Colon faces multiple obstacles that considerably limit his mobility. Complications derived from heart failure and deformities in his feet create a scenario in which to walk and maintain. balance become difficult and painful tasks. His ability to move is severely affected, which has an impact on his quality of life and his ability to manage daily activities.

**B.     The Property in Controversy and the Competence of the Court**

7. The property in controversy is a place of public accommodation, known as Universal Insurance located at the address Cañabon Ward, Hwy. 166 Km. 58.7, Caguas, Puerto Rico and whose coordinates are 18.2343606·66.064:3388.

8. (Hereinafter, we will refer to this place as "the Property" or as "Universal").

9. The defendant is the titleholder, lessor, lessee and/or operator of the aforementioned Property.

**C.     Discrimination at the Property against Plaintiff by Reason of his Disability.**

10. Mr. Faustino visited Universal on July 27 of this year with the main purpose of exploring the possibility of changing his car insurance to this company. He was interested in obtaining information about the benefits and criteria of Universal's vehicle insurance, so that he could make an informed decision about whether it would be advantageous for him to change the insurance provider for his car. As a result of his visit, Mr. Betancourt has knowledge of the existence of the following architectonic barriers in the Property:

    **Property Exterior:**
    a. Corridors adjacent to accessible parking spots do not connect to an accessible route in violation of ADAAG 2010 § 502.3. This situation became more worrisome in the last parking spot from right to left whose adjacent corridor is obstructed by a green container.
    **Property Interior:**
    b. The hallway connecting the entrance and the waiting room does not comply with the 36-inch width required by ADAAG 201.0 §403.5.1 due to its excessive narrowness, and the presence of chairs and an advertising poster that obstruct the necessary space for free traffic flow of persons with disability. The chairs are located in the left side of the hallway considerably reducing the available width.
    c. The exit door is obstructed with a black mat that is not firmly adhered to the floor in violation of 2010 ADAAG § 302.2.
    d. The brown color customer service counter with a blue surface is higher than the maximum allowed by the regulations, that is, it is higher than 36 inches measured from the floor to the counter surface on all its points.

3

ADAAG 2010 § 904. Additionally, the counter does not have a surface at least 36 inches long because the surface is obstructed by a plastic divider. ADAAG 2010 § 904.4.1.

Additionally, the lack of a surface of at least 36 inches long due to obstruction by a plastic divider on the counter aggravates the situation. This obstruction prevented Mr. Betancourt from being able to get close enough to the person shown with his scooter, making it even more difficult for him to communicate with the person and the ability of carrying out transactions comfortably.

**Bathrooms of the Property:**

e. Free space around the toilet: Mr. Betancourt found that the floor area around the toilet is very narrow, since it did not have enough free space around the toilet, specifically, it did not have the required 56 inches from the back of the toilet to the front wall of the toilet, in addition, the space provided is not free from the obstruction, since at the front of the toilet there is a silver color trash can which further reduces the space, making the transfer from the wheelchair or a scooter to the toilet and vice versa in addition to its use. ADMG 2010 § 604.3.l.

f. **Height of the sink**: The sink in the men's bathroom designated as accessible with a blue surface is higher than the maximum height allowed by regulations, that is, it exceeds 34 inches in height measured from the floor to the surface of the sink in all its points. ADMG 2010 §606.3.

g. **The pipe underneath the sinks:** To prevent possible injuries, water pipes and drainage of sink should be isolated, enclosed, or configured to prevent direct contact. Additionally, the area surrounding pipes and surfaces must provide the space necessary for people to comfortably place their knees and toes, as stipulated in ADAAG 2010 §606.5. However, the bathroom sink in the Men's bathroom designated as accessible did not have any type of isolation in the part of the pipes.

h. **The door lock:** The blue door lock in the men's restroom marked as accessible is an operable part that must be operable with one hand and not involve a tight grip or twisting of the wrist, per ADAAG 2010 §309.4, §

4

        404.2.7. However, the bathroom door lock in question requires twisting your wrist, which does not comply with ADA regulations..

    i. **Mirrors:** The mirrors in the men's bathroom marked as accessible are located at a height greater than 40 inches, measured from the height of the floor to the beginning of the reflective surface, which constitutes a violation of the ADMG 2010 §603.3.

    j. **The paper towel dispenser:** According to regulations, paper towel dispensers must be located at a maximum height of 48 inches ADAAG 2010 §606.l & 308. However, in the men's restroom, the operational part of the paper towel dispenser for drying hands installed on the wall adjacent to the sink is located at a height greater than 48 inches, and is also obstructed by the trashcan just below it.

    k. **Soap Dispenser**: In accordance with 2010 ADAAG regulations §205, §309, §308.2.1, soap dispensers are operable parts and, therefore, must be up to a maximum of 48 inches in height to guarantee accessibility. However, in the men's accessible restroom, soap dispensers installed next to each mirror are located at a higher height than required, which represents a violation of ADA and Mr. Betancourt may not use it properly.

    l. The barriers on the exterior of the Property are related to the conditions of Mr. Faustino Betancourt because, as a disabled person, the fact that the corridors adjacent to the parking spots do not connect with an accessible route impeded his ability to reach safely and comfortably from the parking spaces marked as accessible to the desired destination inside the property. As a result, his right to equal opportunity and full participation in on-site bicycle activities and services is hindered. Furthermore, the presence of the green container that obstructs the corridor adjacent to the last parking spot from right to left further aggravates the barrier. This creates an ever more unsafe and difficult condition when passing with his scooter.

11. The barriers inside the property are linked to the conditions of Mr. Faustino Betancourt. Firstly, the width of the hallway that connects to the waiting room represents a significant limitation on the maneuverability of your scooter. This makes it difficult for him to pass between chairs, generating insecurity and

resulting in a lack of accessibility. This in turn causes a feeling of exclusion and hinders his full participation in the establishment.

12. Secondly, the mat obstructing the exit door poses a risk to Mr. Betancourt. Since it is not secured to the floor, there is a possibility of the mat becoming tangled in the wheels of his scooter when trying to get out, which could cause a fall. Finally, the height of the counter poses a significant challenge in Mr. Betancourt's interaction with the staff of the establishment. Being higher than appropriate, it is difficult for him to reach or see the surface of the counter to carry out transactions or receive appropriate attention. This creates a barrier in terms of communication and access to services for Mr. Betancourt, affecting his ability to fully participate in the place, in addition, the lack of a surface of at least 36 inches long, due to the obstruction caused by a plastic divider on the counter which makes the situation worse. This obstruction prevents Mr. Betancourt from being able to get close enough to the counter with his scooter, making it even more difficult for him to communicate with the staff and the possibility of carrying out transactions comfortably.

13. The barriers in the Property's bathroom are related to the conditions of Mr. Faustino Betancourt because, first of all, the narrow space in the bathroom cubicle prevents him from maneuvering properly and causes difficulties when passing from his scooter to the toilet. Furthermore, the inappropriate height of the sink prevents him from using it correctly, since he cannot reach the faucet. The situation is aggravated by the inadequate height of the soap dispenser, which requires Mr. Betancourt to stretch to access it, increasing the risk of falls and injuries. This risk is exacerbated by the fact that the sink pipe is also exposed, which represents another potential risk. Likewise, the height of the paper towel dispenser forces Mr. Faustino to stretch, which poses a risk of falling or

destabilization from his chair when trying to reach the paper towels. The obstruction also prevents you from getting close enough to the dispenser which adds complications. Mirror height is discriminatory for Mr. Faustino, since due to his height he cannot see himself properly, which reinforces his feeling of not being welcome on the property. The lock of the bathroom door represents an additional problem for him since it poses additional or unnecessary efforts when trying to manipulate it with the problem with his hands when entering or exiting the bathroom.

Lastly, the lack of isolation of sinks contradicts ADA regulations and carries a potential risk of injury to Mr. Faustino. Since he uses his scooter, his legs are under the sink, in close proximity to the pipe, which could expose him to bumps, injuries or accidents.

14. These problems on the exterior of the Property could be solved by creating an accessible route that connects with the nearby areas in the parking lots or by changing the location of the accessible parking spaces, in addition to adding the green container to the location. so that it does not obstruct the space adjacent to the station.

15. The barriers inside the Property could be solved as follows, by reconfiguring the counter so that it meets the required height and length, and changing the chairs in the location corridor so that it meets the required width.

16. The barriers in the bathroom of the Property could be solved in the following way: First: removing from the toilet area all the elements that hinder and prevent the existence of the free space required, expanding the existing bathroom so that it guarantees the space or reconfiguring it. In front of the dispensers and the mirrors, by lowering them so that they are more accessible and avoid damage to the user. Additionally, the door lock must be replaced and cover the pipe under the sink.

17. It is possible that Mr. Betancourt will be affected in the future by the barriers that exist on the property because:

a. Mr. Betancourt is determined to return to the property within the next few months in order to deepen his understanding of the details of the insurance, ask

additional questions, and ensure that he is making the right choice to protect his investment and personal well-being.

b. Mr. Betancourt has a great interest in the services offered by Universal since its vehicle insurance service offers features that his current company does not have.

c. The distance between Mr. Betancourt's residence and the property is 23 minutes by car, a reasonably close distance for him.

d. Mr. Betancourt frequently moves around the area where the Property is located because it is located on a main road that connects with several places of interest to him, such as the Los Prados shopping center.

18. Mr. Betancourt is interested in returning to the Property as a civil rights tester, that is, as a person in charge of evaluating whether his civil rights are being respected and protected. In the context of the ADA, a civil rights tester is someone who investigates and evaluates whether people with disabilities are receiving the same access and fair treatment as people without disabilities. The role of the civil rights tester is crucial in the context of the ADA, since this Act was designed to protect the rights of people with disabilities and to ensure that they have access to the same services and opportunities as people without disabilities. However, even though the ADA was enacted in 1990, people with disabilities still face barriers and discrimination in their daily lives. Historically, civil rights testers have played an important role in the fight for equal rights and the elimination of discrimination in the United States. In the 1960s, civil rights testers were used by leaders of the civil rights movement to evaluate whether businesses and institutions were complying with civil rights laws. These testers helped expose discrimination and pressure businesses and institutions to comply with the law. Their work is important because it helps ensure that people with disabilities have access to the same services and opportunities as people without disabilities, and it helps to expose and eliminate discrimination. <u>Langer v. Kisser</u>. No. 21-55183 (9th Cir. Jan. 23, 2023) ("Being an ADA tester is, in fact, a legitimate reason to go to a business and the district court's insinuation otherwise is legally flawed.")

19. Mr. Betancourt has suffered dignitary damage, which is a type of damage in cases of discrimination, as expressed in the binding case [2] Laufer v. Acheson Hotels LLC, 50 F.4th 259 (1st Cir. 2022) ("Dignitary harm or stigmatic injuries caused by discrimination have long been held a concrete injury in fact") These damages seek to compensate for the loss of dignity and self-esteem that a person may experience as a result of discrimination. In other words, dignitary damages recognize that discrimination cannot only cause physical or economic harm, but can also profoundly affect the self-image and self-esteem of the discriminated person. This may include feelings of shame, humiliation, and belittlement. The ADA allows people who have been discriminated against on the basis of disability to seek compensation for personal damages. Mr. Betancourt reports that he claims dignitary damages in the following two independent ways: (1) through judicial recognition that there was dignitary injury to Mr. Betancourt; (2) by imposing the amount of one dollar as dignitary damage. No compensatory damages are requested.

20. Because the construction and alteration history of the property is not known at this time, it is alleged: the property was built and/or altered after March 15, 2012; In the alternative, the Property was built or altered after January 26, 1993; Alternatively, the property was built prior to January 26, 1998, but the defendant has the financial resources to bring the property into compliance with the most current building codes.

### III. LEGAL REMEDIES REQUESTED

**WHEREFORE**, the plaintiff very respectfully requests the following legal remedies:

A. A permanent injunction pursuant to 42 USC§ 12188 (a) (2) and 28 CFR § 86.504 (a) ordering the Plaintiff to remove architectural barriers that exist on the Property by complying with accessible design guidelines that apply according to its date of construction and alteration. If it is a property that existed as of January 26, 1998, that the property be altered to bring it into compliance with the most recent accessible design guidelines promulgated under the ADA to the maximum extent

---

[2] Binding as to federal law only.

  economically feasible for the defendant, either immediately or through a long-term transition plan towards full compliance. If the creation of a transition to compliance plan is not economically feasible, or if the changes that are necessary are not structurally possible, we request that access to goods and services be ordered to be made available through alternative methods pursuant to 42 U.S.C. § 12182(b)(2)(A)(v).

B.  A permanent injunction pursuant to 42 USC§ 12188 (a) (2) and 28 CFR § 36.504 (a) ordering the responding party to eliminate currently existing discriminatory policies and practices that prevent the elimination of the architectural and/or political barriers and practices that prevent the provision of reasonable accommodations necessary for equal treatment.

C.  In the event that the defendant continues its discriminatory condition, it is requested in accordance with 42 USC § 12188 (a) (2) and 28 CFR § 36.504, that the closure and shut down of the Property be ordered as a precautionary measure to stop the discriminatory condition until it has been reliably proven and to the satisfaction of the court that the discrimination has been eliminated.

D.  Dignitary damages in the amount of one dollar or through a judicial pronouncement declaring that the dignity of the plaintiff was violated.

E.  Attorney's fees, costs and litigation expenses, awarded to the plaintiff in the event he prevails.

F.  The provision of any other remedy that is fair and proper, in law or equity, and that has not been expressly requested even though it is appropriate as a matter of law and in accordance with Rule 42.4 of the Rules of Civil Procedure of Puerto Rico.

**RESPECTFULLY SUBMITTED.**

Dated: August 17, 2003

**VELEZ LAW GROUP LLC**
Division of Civil Rights


s/Jose Carlos Vélez Colón
José C. Vélez Co1ón, Esq.

RUA 18913
1969 S. Alafaya Trail #379
Orlando, FL 32828-8732


Email.: vlg@velezlawgroup.com
Tel: (787) ·422-1881 (787) •422-1968


COUNSEL FOR PLAINTIFF

11

# CERTIFICATION

**CERTIFIED**: That the attached document(s) is (are) true and correct translation(s) of the original document(s) from Spanish into English.

Further, that I am a Federally Certified Court Interpreter & Translator for the Administrative Office of the U. S. Courts, within the active list of Certified Interpreters and Translators at the U.S. District Court, for the District of Puerto Rico.

DOCUMENT:     Complaint in Betancourt Colon v. Universal Insurance, Inc.

DATE: 11-22-2023

CONTROL#:     CTR-V1-0-23-19

*Carlos T. Ravelo*

AOUSC Certification # 95-063

